IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CORLISS MOORE & ASSOCIATES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT CONTROL SERVICES, INC., *et al.*,<br><br>Defendants. | Civil Action No. 3:13-CV-115 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Credit Control Services, Inc.'s ("CCS") Motion for Withdrawal of Reference ("Motion for Withdrawal") (ECF No. 1). This matter arises out of a bankruptcy case involving Movie Gallery, Inc., Hollywood Entertainment Corporation, Movie Gallery US, LLC, MG Real Estate, LLC, and HEC Real Estate, LLC (collectively "Debtors").[1] The Bankruptcy Court confirmed Debtors' Joint Plan of Liquidation ("Plan") on October 2, 2010. Under the Plan, the assets and contractual obligations of the Debtors were consolidated and are being administered by Corliss Moore & Associates, LLC ("Liquidating Trustee"). After the Plan was proposed, but before it was approved, Debtors contracted with CCS to pursue collection of outstanding customer accounts (this contract is called the "CCS Collection Agreement"). The Liquidating Trustee subsequently filed an adversary proceeding complaint in bankruptcy court, naming CCS as a defendant for breach of the CCS Collection Agreement. CCS now moves this Court to withdraw the reference of the contract action to the bankruptcy court pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Local Bankruptcy Rule 5011-1. The Court held a hearing in this matter on April 25, 2013. For the reasons stated below, the Court DENIES the Motion for Withdrawal.

---

[1] Prior to filing for bankruptcy, Debtors were in the business of selling and renting videos and video games at retail stores across the United States. The Debtors' customers routinely incurred various fees and charges that were due and payable to the Debtors pursuant to rental agreements.

## BACKGROUND

Debtors filed a Chapter 11 bankruptcy on February 2, 2010 and a Joint Plan of Liquidation on July 13, 2010. The Bankruptcy Court confirmed the Plan in an order issued on October 2, 2010. Since the effective date of the plan, the Liquidating Trustee has been administering the Debtors' assets. After submitting the Plan, but prior to its confirmation by the bankruptcy court, Debtors engaged CCS to pursue collection of outstanding customer accounts, pursuant to the CCS Collection Agreement. CCS subsequently subcontracted with National Credit Solutions to undertake a significant portion (the Amended Complaint alleges 99%) of the collection of the customer accounts, pursuant to the "NCS Collection Agreement." On April 17, 2012, the Liquidating Trustee filed a complaint against CCS, alleging CCS and NCS breached the terms of the contracts by using unlawful collection practices.[2] The Liquidating Trustee amended the complaint on June 22, 2012 and CCS filed an Answer, a counterclaim against the Liquidating Trustee, and a cross claim against NCS.

The Amended Complaint alleges CCS breached the CCS Collection Agreement and that its actions, and the actions of NCS, caused the Liquidating Trustee's portfolio of outstanding customer accounts to suffer a diminution in value. The Liquidating Trustee alleges CCS and NCS actions resulted in customer disputes and investigations by various states' Attorneys General and forced the Liquidating Trustee to enter into a Stipulation and Agreed Order with the Attorneys General of all fifty states and the District of Columbia, which precluded the Liquidating Trustee from reporting to credit agencies. The Amended Complaint, therefore, includes three claims: (1) breach of contract by CCS, (2) CCS indemnification pursuant to the NCS agreement, and (3) third party beneficiary claim against NCS.

In its Answer, CCS explicitly denied the bankruptcy court has jurisdiction over the adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. CCS further denied the adversary

---

[2] The Amended Complaint alleges CCS and NCS violated the Fair Debt Collection Practices Act ("FDCPA") by collecting fees that were not expressly authorized by the customer agreements creating the debts or the law.

proceeding, including counter and cross claims, was a core proceeding within the meaning of § 157(b)(2) and did not consent to entry of final orders or judgment by the bankruptcy court. CCS's counterclaim against the Liquidating Trustee alleges (1) the Debtors breached the CCS Collection Agreement by providing inaccurate placement data to CCS at the time the customer accounts were transmitted to CCS for collection, (2) the Debtors breached the CCS Collection Agreement by failing to provide sufficient backup documentation to support the validity of the customer accounts; and (3) the nature of the complaints that led to entry of the Stipulation extended beyond the collection activities of CCS and NCS.

This matter has been litigated in the bankruptcy court since the Liquidating Trustee filed its Complaint on April 17, 2012. On May 8, 2012, CCS moved to dismiss the Complaint. After a hearing, the bankruptcy court denied the motion to dismiss on two counts and granted the motion to dismiss one count on June 22, 2012. The Liquidating Trustee then filed its Amended Complaint and CCS filed its "Answer and Affirmative Defenses and Counterclaim." On July 18, 2012, the Liquidating Trustee moved for entry of default against NCS, which was granted by the Clerk of the bankruptcy court on July 19, 2012. The Liquidating Trustee states it responded to CCS's first set of interrogatories and that CCS has noticed Rule 30(b)(6) depositions concerning thirty-three topic areas.

On September 5, 2012, the Liquidating Trustee filed a motion for substitution of counsel in adversary proceeding, which was granted on September 11, 2012. In October of 2012, the parties jointly asked the bankruptcy court to approve mediation in the matter and requested that all deadlines referencing the trial in the pretrial order be suspended and postponed. The bankruptcy court approved:

> The final pretrial/status conference currently scheduled for November 20, 2012 and the trial currently scheduled to commence on December 5, 2012, both pursuant to the Pretrial Order, are hereby suspended, postponed and removed from the docket. Further, all deadlines referenced to "Trial" within the Pretrial Order are hereby suspended and postponed.

*Corliss Moore & Associates, LLC v. Credit Control Services, Inc. (In re Movie Gallery, Inc.)*, Adv. Proc. No. 12-03081-DOT, ECF No. 43 (Bankr. E.D. Va. Oct. 9, 2012). The parties participated in mediation with Dennis W. Dohnal on December 11, 2012. The mediation was unsuccessful and the parties resumed active litigation. On January 4, 2013, CCS filed a Motion to Compel Discovery Responses. The bankruptcy court held a hearing on the motion on January 30, 2013 and declined to grant CCS's motion. On January 29, 2013, the day before the hearing on CCS's motion to compel, CCS filed the instant Motion for Withdrawal. The Motion for Withdrawal is fully briefed and was argued at a hearing on April 25, 2013. The Motion for Withdrawal is therefore ripe for decision.

## LEGAL STANDARD

Federal district courts have "original and exclusive jurisdiction of all cases under title 11" of the United States Code and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a), (b). The district court may refer "[a]ny or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy court for the district. 28 U.S.C. § 157(a).

"The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern v. Marshall,* 131 S. Ct. 2594, 2603 (2011). "Congress has divided bankruptcy proceedings into three categories:" (1) those that arise under title 11, (2) those that arise in a title 11 case, and (3) those that are related to a case under title 11. *Id.* A bankruptcy judge "may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11'" (the first two categories of proceedings) *Id.* (quoting § 157(b)(1)). In a referred matter not constituting a core proceeding, but that is otherwise related to a case under title 11 (the third category of proceedings), a bankruptcy judge may generally "only 'submit proposed findings of fact and conclusions of law to the district court.'" *Id.* at 2604 (quoting § 157(c)(1)). A bankruptcy judge may, however, enter dispositive orders in non-core

proceedings that are otherwise related to a case under title 11 when the parties consent to such jurisdiction. *See Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 402 (4th Cir. 1992).

A district court must withdraw matters from the bankruptcy courts "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." § 157(d). In other cases, a district court has the discretion to withdraw cases for good cause shown. *Id.* To determine whether cause exists, district courts within the Fourth Circuit consider the following factors: "(i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial." *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 681 (Bankr. E.D. Va. 2003). Discretionary withdrawal is "determined on a case-by-case basis by weighing all the factors presented in a particular case." *Id.* at 682.

## DISCUSSION

### 1. Case Categorization

To determine whether withdrawal of reference is appropriate in this case, the Court must first determine what type of case is created by a claim regarding the Parties' post-petition contract. Regardless of whether a determination that a proceeding is a core proceeding necessitates denial of withdrawal, as the Liquidating Trustee contends, both Parties and the Court agree the core/non-core determination is a key consideration for the Court. *See id.* Determining whether this adversary proceeding is a core or non-core proceeding requires the Court to consider a circuit split on whether claims relating to post-petition contracts and transactions are core or non-core under 28 U.S.C. § 157(b). The analysis must begin with the enactment of § 157. In 1982, a plurality of the Supreme Court struck down the jurisdictional provision of the Bankruptcy Act of 1978 in *Northern Pipeline Construction Co. v. Marathon*

5

*Pipe Line Co. Marathon* considered the constitutionality of bankruptcy court jurisdiction over a state law claim based on the breach of a contract entered into prior to one of the parties filing for bankruptcy (a pre-petition contract). *Id.* at 56. The Court held breach of contract and misrepresentation claims in the case were based on rights not created by Congress and rights not considered public rights, and therefore, granting the bankruptcy courts jurisdiction over the claims violated Article III of the Constitution. *Id.* at 71, 87 (plurality opinion). Two justices also concurred in the judgment of the Court, finding that the grant of jurisdiction over claims arising entirely in state law violated Article III. *Id.* at 90 (Rehnquist, J., concurring).

In response to *Marathon*, Congress attempted to solve the jurisdictional issues by creating the core/non-core distinction in § 157. Under the 1984 Act, a bankruptcy court has jurisdiction over all "core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." § 157(b)(1). The bankruptcy court may hear a non-core proceeding "that is otherwise related to a case under title 11," but may only submit proposed findings to the district court unless the parties consent to the final jurisdiction of the bankruptcy court. § 157(c)(1). Section 157 also provides a non-exhaustive list of examples of core proceedings. § 157(b)(2). Pertinent to this case, the list of examples include "matters concerning the administration of the estate," § 157(b)(2)(A), and "other proceedings affecting the liquidation of the assets of the estate." § 157(b)(2)(O).

One side of the circuit split holds that claims relating to post-petition contracts or transactions are core proceedings under § 157(b)(2)(A) and/or (O). The reasoning of the circuits' holding as such focuses mainly on the nature of the transaction, rather than the nature of the cause of action. The courts reason that post-petition contracts themselves "concern[] the administration of the estate," § 157(b)(2)(A), and the post-petition contracts are not traditional contracts because they are made with an estate under the jurisdiction of the bankruptcy court— the equivalent to contracting with the bankruptcy court itself. The First Circuit reviewed the history of the grant of jurisdiction to the bankruptcy courts and held that an action arising out of

a post-petition contract to collect accounts receivables was a core proceeding under § 157(b)(2)(A) and (O). *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165 (1st Cir 1987). The court recognized that, after *Marathon*'s plurality opinion, the Supreme Court characterized *Marathon* as a case in which it "was unable to agree on the precise scope and nature of Article III's limitations" and stated *Marathon* "establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Id.* at 166 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (1985)).

Under the then-newly enacted § 157, the First Circuit found that an action based on a post-petition sale of assets constituted a core proceeding. *Id.* at 167. The court found

> [t]he action of a debtor-in-possession to collect a post-petition debt arising from the sale of the estate's assets, unlike a suit to recover a pre-petition debt, falls within the literal wording of 28 U.S.C. § 157(b)(2)(A), "matters concerning the administration of the estate," because it involves a claim that arose out of the administrative activities of a debtor-in-possession.

*Id.* at 168. The court also found the action fell "within the literal wording of 28 U.S.C. [§] 157(b)(2)(O), 'other proceedings affecting the liquidation of the assets of the estate,' because the claim arose out of the debtor's efforts to liquidate estate assets." *Id.* The First Circuit also relied on the legislative history of the new statute, which indicated that "Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits." *Id.* Finally, the court noted that "the fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not itself determine that it is non-core." *Id.* at 169. The court therefore concluded that the action was core.

The First Circuit next determined that its interpretation of § 157(b) did not violate Article III. *Id.* The court reasoned that "[t]he Supreme Court has repeatedly turned to history and tradition to help define the type of adjudicatory proceeding that the Constitution reserves exclusively for Article III courts." *Id.* An examination of the history of post-petition claims

7

revealed "that they are not 'traditional contract actions'; nor are they matters that 'historically' have been decided only in the equivalent of Article III courts." *Id.* The court found that to the contrary, bankruptcy courts have adjudicated claims similar to the one raised "at least since the enactment of the Bankruptcy Act of 1898." *Id.* (citing 4B King, Collier on Bankruptcy ¶ 70.98, at 1202-03 (14th ed. 1978) (noting a "court of bankruptcy has summary power over a delinquent purchaser at a sale in the bankruptcy proceedings"); *In re Alan Wood Steel Co.*, 1 B.R. 167, 169 (Bankr. E.D. Pa. 1979) (finding the bankruptcy court's power to hear and adjudicate summarily a receiver's action to collect a post-petition account receivable was "crystal clear")).

The court also addressed any concern Article III reflects for procedural fairness, finding its case differed from *Marathon*. *Id.* at 170. The court stated

> [a] party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its *pre*-petition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court.

*Id.* The court further found that "resolution of separation of powers questions may also prove sensitive to practical considerations, such as the need to place in a single set of hands the various functions that Articles I, II, and III would otherwise keep separate." *Id.* The court therefore concluded the finding that a dispute involving a post-petition transaction is a core proceeding, subject to the jurisdiction of the bankruptcy court, does not violate Article III. The Second Circuit adopted the First Circuit's reasoning and read *Marathon* to apply only to pre-petition contract claims, holding an action involving a post-petition insurance contract constituted a core proceeding. *Ben Cooper, Inc. v. Insurance Co. Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir. 1990).[3]

The opposing side of the circuit split holds that state law contract claims based on post-

---

[3] A number of district and bankruptcy courts have also followed the First Circuit's reasoning, finding an action surrounding a post-petition contract or transaction is core. *See, e.g., Bass v. Millican (In re Telemarketing Commc'ns)*, 95 B.R. 794 (Bankr. D. Colo 1989); *In re Standard Metals Corp.*, 97 B.R. 593 (Bankr. D. Colo. 1988); *J.B. Van Sciver Co. v. William Cooper Assocs., Inc. (In re J.B. Sciver Co.)*, 73 B.R. 838 (Bankr. E.D. Pa. 1987); *Pester Refining Co. v. Mapco Gas Products, Inc. (In re Pester Refining Co.)*, 66 B.R. 801 (Bankr. S.D. Iowa 1986) (subsequent history omitted).

petition contracts or transactions are non-core proceedings under *Marathon*. These courts do not recognize a legally significant difference between a contract entered into pre-petition versus post-petition. The reasoning of these courts focuses on the nature of the cause of action and whether it arises under title 11 or arose in a case under title 11. The Fifth Circuit declined to follow the Second Circuit's reasoning and found an action involving a post-petition sale of stock was not a core proceeding under § 157. *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987). The Fifth Circuit declined to give § 157(b)(2)(O), "proceedings affecting . . . the estate," such a broad reading as to encompass "proceedings having a 'conceivable effect on the estate.'" *Id.* at 95. The court reasoned that under such a broad interpretation, "the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act." *Id.* The court noted that the plurality in *Marathon* "held that only controversies involving 'public right,' rights provided to an individual by Congress . . . may be removed from Article III courts." *Id.* (citing *Marathon*, 458 U.S. at 69-70). This holding, according to the Fifth Circuit, "implicitly recognized that the exceptional powers of Congress under the bankruptcy clause may sometimes allow for delegation of judicial power." *Id.* However, *Marathon* noted "the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is as issue in this case." *Id.* (quoting *Marathon*, 458 U.S. at 71). From this *Marathon* language, the Fifth Circuit derived two points:

> First, bankruptcy judges may exercise full judicial power only over those controversies that implicate the particular rights and powers of bankruptcy or . . . controversies "at the core of the federal bankruptcy power." Second, controversies that do not depend on the bankruptcy laws for their existence—suits that could proceed in another court even in the absence of bankruptcy—are not core proceedings.

*Id.* at 96.

The court found § 157 incorporates the principles suggested in the language of the

*Marathon* opinions, vesting full "judicial power in the bankruptcy courts over 'core proceedings *arising under title 11, or arising in a case under title 11.*'" *Id.* (quoting § 157(b)(1)). The court defined "arising under" in the same way it was used in 28 U.S.C. § 1331, meaning "proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Id.* at 96-97. The meaning of "arising in," the court noted, is less clear, "but seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases." *Id.* at 97 (citing 1 Collier on Bankruptcy ¶ 3.01 at 3-23 (1987)). Based on these definitions, the court found:

> As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Id.* at 97. The court states this "interpretation of core proceeding based on its equation with 'arising under' and 'arising in' proceedings comports with the interpretation suggested in *Marathon*." *Id.*

The Fifth Circuit therefore concluded that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could only arise in the context of a bankruptcy case." *Id.* Because the suit was based on state contract law, the court found it was "not based on any right created by the federal bankruptcy law" and "could have proceeded in state court," and therefore was non-core. *Id.* The Eleventh Circuit adopted the Fifth Circuit's standard for determining whether a proceeding is core or non-core. *Gower v. Farmers Home Admin. (In re Davis)*, 899 F.2d 1136 (11th Cir. 1990). Relying on that standard, a bankruptcy court in Florida also found an action relating to a post-petition transaction was non-core under § 157. *Venn v. Kinjite Motors, Inc. (In re WMR Enters., Inc.)*,

10

163 B.R. 887 (Bankr. N.D. Fla. 1994). [4]

Each of the cases discussing post-petition contracts cited above were decided prior to the Supreme Court's recent consideration of the core/non-core distinction and constitutionality of § 157(b) in *Stern v. Marshall*. In *Stern*, the Court held that a purely state law counterclaim was core under § 157(b)(2)(C) ("counterclaims by the estate against persons filing claims against the estate"), but concluded that the statute's grant of jurisdiction to the bankruptcy court over the purely state law claim violated Article III. 131 S. Ct. at 2608. The Court found that a counterclaim for defamation was a "state common law claim" just as the claims raised in *Marathon*. *Id.* at 2611. The Court affirmed *Marathon*'s holding that a claim not asserting a public right cannot be decided outside of the Judicial Branch. *Id.*

The Court went on to recognize that its discussion of public rights has not been "entirely consistent." *Id.* Pertinent to this case, the Court stated that after *Marathon*,

> the Court rejected the limitation of the public rights exception to actions involving the Government as a party. The Court has continued, however, to limit the exception to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's authority.

*Id.* at 2613 (citing *United States v. Jacarilla Appache Nation*, 131 S. Ct. 2313 (2011)). In light of the *Stern* decision, this Court finds the reasoning of the Fifth Circuit more persuasive and finds that the adversary proceeding alleging a state law breach of contract claim is a non-core proceeding.

The case is, however, clearly "otherwise related to a case under title 11." § 157(c)(1). The "[c]ourts have adopted an expansive definition of what is a related proceeding." *Canal Corp.*,

---

[4] The Fourth Circuit has not weighed in on the issue, except for the unpublished case of *Governor's Island v. Eways*, 941 F.2d 1206, (4th Cir. 1991) (unpublished). The court held that § 157(b) granted core jurisdiction to the bankruptcy court in "an action by the debtors in possession to enforce their sales contracts." *Id.* at *2. The Fourth Circuit cited the First Circuit's decision in *Arnold Printworks*, noting the First Circuit held that an action on a post-petition contract for sale of its assets was a core proceeding. *Id.* As CCS notes, however, the fact that the sale in *Eways* was a core proceeding is clearer than in this case because the *Eways* sale was made at a bankruptcy public auction sale, unlike the contract made in this case between the Debtors and CCS outside of the bankruptcy proceedings.

960 F.2d at 403 (citing *Collier on Bankruptcy* (MB) § 3.01 at 3-28 (15th ed. 1989)). Though there may be some circumstances where "an extremely tenuous connection to the estate would not justify the existence of jurisdiction, related to jurisdiction is to be broadly interpreted." *Id.* (internal quotation marks omitted) (quoting *Collier on Bankruptcy* (MB) § 3.01 at 3-28). The contract dispute in this case clearly qualifies as "related to" because the parties entered into the contract after the Plan was submitted to the bankruptcy court for confirmation and relates to collecting the receivables for the company involved in bankruptcy proceedings. The contract dispute is therefore related to a case under title 11, and the bankruptcy court may have the authority to enter a final judgment in this case if the parties have consented to jurisdiction.

### 2. Consent to Bankruptcy Court Jurisdiction

For the reasons that follow, the Court finds that CCS consented to the jurisdiction of the bankruptcy court to enter a final judgment in this non-core, but otherwise related proceeding. A bankruptcy judge "may enter appropriate orders and judgments" in all core proceedings arising under title 11. § 157(b)(1). A bankruptcy judge may also enter dispositive orders in non-core proceedings that are otherwise related to a case under title 11 as long as the parties consent to such jurisdiction. *See Canal Corp.*, 960 F.2d at 402. The consent of the parties may be implied from the conduct of the parties. *Id.* at 403-04. Here, though CCS denied that it consented to the jurisdiction of the bankruptcy court, CCS entered into a post-petition contract with Debtors, and after the adversary proceeding commenced, CCS sought discovery through the bankruptcy court and filed a motion to dismiss in this case. CCS was actively involved in the bankruptcy court proceedings and waited over nine months to move for withdrawal of reference. Through such conduct CCS implicitly consented to the jurisdiction of the bankruptcy court, and the bankruptcy court may therefore enter a final order in this non-core proceeding.

Most significantly, CCS impliedly consented to the jurisdiction of the bankruptcy court by entering into a post-petition contract to collect the receivables of a debtor under the jurisdiction of the bankruptcy court. Some courts find entering into such a contract is alone

sufficient to impliedly consent to the jurisdiction of the bankruptcy court. *See Edgcomb Metals Co. v. Eastmet Corp.*, 89 B.R. 546, 550 (D. Md. 1988); *Canadian Shield Fin. Corp. v. Estate of Deutscher (In re Vincent)*, 68 B.R. 865, 867 (Bankr. M.D. Tenn. 1987). By entering into the contract with the Liquidating Trustee to collect the receivables of a company in bankruptcy, CCS knowingly integrated itself into the bankruptcy action in order to share in the assets of the bankruptcy estate. CCS further contracted to conduct a task directly related to the bankruptcy proceedings and the estate. CCS's post-petition contract with the Liquidating Trustee therefore works with its other conduct to demonstrate its implied consent to a final order in bankruptcy court.

CCS's conduct throughout this action within the bankruptcy court further convinces the Court that CCS consented to the jurisdiction of the bankruptcy court. Since the commencement of this suit, CCS actively engaged in discovery proceedings in the bankruptcy court. CCS noticed depositions concerning thirty-three topics, served interrogatories, and filed a motion to compel discovery as late as January 4, 2013. CCS also filed a motion to dismiss, asking the bankruptcy court to dismiss the Liquidating Trustee's complaint. CCS cannot now ask the Court to withdraw the reference of this case to the bankruptcy court. *See, e.g.*, *Stern*, 131 S. Ct. 2594; *Execs. Benefits Ins. Agency, Inc. (In re Bellingham Ins. Agency)*, 702 F.3d 553, 568 (9th Cir. 2012). CCS waited over nine months, until the eve of the bankruptcy court's hearing on CCS's motion to compel discovery, to file its Motion for Withdrawal. Such conduct, combined with the fact that CCS knowingly entered into a contract with a company under the jurisdiction of the bankruptcy court, implies CCS's consent to the jurisdiction of the bankruptcy court and outweigh CCS's statement in its answer that it did not consent to the entry of final orders in the bankruptcy court. Finding CCS consented to the jurisdiction of the bankruptcy court, this Court need not address the discretionary withdrawal factors and DENIES CCS's Motion for Withdrawal.

## CONCLUSION

For the reasons stated above, the Court DENIES the Motion for Withdrawal.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

> _____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this __4th__ day of September 2013.